07411.00089

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

CANDACE DRYFKA, Individually and as
Representative of the Estate of JOHN E. DRYFKA,
Deceased,

                  Plaintiff,

   v.

TRANE US, INC, f/k/a AMERICAN STANDARD
INC., including GENERAL DYNAMICS D/B/A
GENERAL DYNAMICS ELECTRIC BOAT, *et al.*,

                  Defendants.

Case No. 3:13-cv-01019-JPG-DGW

### DEFENDANT GENERAL DYNAMICS CORPORATION'S
### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1442, and 1446 defendant General Dynamics Corporation sued

incorrectly herein as GENERAL DYNAMICS d/b/a GENERAL DYNAMICS ELECTRIC BOAT

("GDEB")[1] hereby files its Notice of Removal of the above-entitled civil action, now pending in the

Circuit Court, Third Judicial Circuit, Madison County Illinois bearing Docket No.: No. 2012L 000042

to the United States District Court for the Southern District of Illinois:

In support, GDEB states:

### PROCEDURAL HISTORY

1.     Plaintiff initiated the instant action against GDEB in the Circuit Court, Third Judicial

Circuit, Madison County Illinois, by service of Summons and First Amended Complaint dated

March 6, 2012. A copy of plaintiff's Summons and First Amended Complaint is annexed hereto as

**Exhibit "A."**

---

[1] General Dynamics was sued in this action for liabilities which are presently owned by Electric Boat Corporation.
Electric Boat Corporation was a division of General Dynamics Corporation until 1995. In 1995, Electric Boat
incorporated and assumed all of the assets and liabilities of the Electric Boat Division by way of a Purchase
Agreement. The facility and removing entity at issue in this case is Electric Boat Corporation in Groton,
Connecticut. As the alleged injury causing activity took place prior to 1995, for simplicity, we refer to the removing
defendant as "GDEB."

General Dynamics Corporation states that in filing this notice, General Dynamics Corporation expressly reserves
and does not waive its right to move for summary judgment based on successor liability principles.

1604726.1

2.      Plaintiff's First Amended Complaint alleged, *inter alia,* that decedent John Dryfka was exposed to asbestos while serving in the United States Navy from 1960-1977. Decedent's work in the Navy allegedly included service in the following posts: Nuclear Electrician on the *USS Swordfish* and *USS Andrew Jackson* (1960-1966); Reserve Instructor on the *USS Drum* (May 1966 to February 1967); Engineer/Diving Officer on the *USS Florikan* (1966-1970); Material Officer Instructor at the Naval School Diving and Salvage (1970-May 1974); Qualified Submarine Officer aboard the *USS Halibut* (1974-1976); and Special Projects Material Officer at the Commander Submarine Development Group One (1977). Decedent also allegedly enrolled in the Naval School Deep Sea Divers in Washington D.C. where he trained as a Qualified HE02 Diving Officer (1967). See Exhibit "A," ¶ 4.

3.      As against GDEB (and dozens of other co-defendants), plaintiff alleged three causes of action:[2] Negligence Count as to Manufacturers of Asbestos Products, Willful and Wanton Count as to Manufacturers of Asbestos Products and Loss of Consortium. See Exhibit "A" Counts I, II and X.

4.      None of the vessels implicated in the First Amended Complaint were built by GDEB. They were built by the following shipyards:

- *USS Swordfish*: Mare Island Naval Shipyard[3]
- *USS Andrew Jackson*: Mare Island Naval Shipyard[4]
- *USS Drum*: Portsmouth Naval Shipyard[5]
- *USS Florikan*: Moore Dry Dock Company[6]
- *USS Halibut*: Mare Island Naval Shipyard[7]

---

[2] The First Amended Complaint contained 10 causes of action. Seven of these causes of action were directed at other parties, and not at General Dynamics. See Exhibit "A."

[3] http://www.history.navy.mil/photos/sh-usn/usnsh-s/ss193.htm

[4] http://www.history.navy.mil/danfs/a8/andrew_jackson-ii.htm

[5] http://www.history.navy.mil/danfs/d6/drum.htm

[6] http://www.history.navy.mil/danfs/f3/florikan.htm

[7] http://www.history.navy.mil/danfs/h1/halibut-ii.htm

Accordingly, the face of the First Amended Complaint did not notice GDEB with any potential basis for removal.

5. On May 23, 2012, plaintiff served Answers and Objections to Defendants' Standard Asbestos Interrogatories. Plaintiff's answers to Interrogatories are annexed hereto as **Exhibit "B."** Similar to the First Amended Complaint, the Interrogatories indicated that decedent was allegedly exposed to asbestos during his service aboard the *USS Swordfish*, *USS Andrew Jackson*, *USS Drum*, *USS Florikan*, *USS Halibut* and at Naval School in Washington, DC. See Exhibit "B," Interrogatory No. 5. The Interrogatories averred further that decedent's service included training at the Nuclear Power School in New London, Connecticut and Idaho Falls, Idaho. See Exhibit "B," Interrogatory No. 5.

6. Plaintiff's Interrogatory responses thus did not provide any basis for GDEB's potential liability and/or any potential basis for removal.

7. Three witnesses were produced for deposition: Gary Lester (June 27, 2012), Albert Millirons (November 30, 2012), Wayne Rutland (June 6, 2012). See the transcripts of Gary Lester, Albert Millirons and Wayne Rutland, annexed hereto as **Exhibits "C," "D"** and **"E,"** respectively.

8. All three witnesses served with decedent in the Navy and testified as to his potential exposure to asbestos while in the Navy. None of the witnesses provided any testimony that any of the implicated vessels were constructed, repaired, overhauled or modernized at any GDEB facility in decedent's presence. None of the witnesses provided any testimony that any GDEB employee was present during any portion of decedent's service aboard any of the vessels and/or any activity which allegedly contributed to his alleged injuries. None of the witnesses provided any testimony that decedent was exposed to asbestos from any GDEB product during his Navy service or at any time in his life. In approximately 500 pages of combined testimony, neither Gary Lester, Albert Millirons, nor

Wayne Rutland uttered the words "General Dynamics" or "Electric Boat." <u>See</u> Exhibits "C," "D" and "E."

9.      Over the course of several months, counsel for GDEB made several requests for dismissal and/or an articulation of a basis for liability to plaintiff's counsel. GDEB received no response from plaintiff's counsel.

10.      Accordingly, on August 13, 2013, GDEB filed its motion for summary judgment on the basis that no evidence was ever produced in this action indicating that decedent was exposed to asbestos from any asbestos-containing product allegedly attributable to GDEB during the course of his service in the U.S. Navy or at any other time in his life. <u>See</u> General Dynamics' motion for summary judgment, annexed hereto as **Exhibit "F."**

11.      GDEB's motion for summary judgment was set for hearing on September 6, 2013. <u>See</u> General Dynamics' Notice of Hearing, annexed hereto as **Exhibit "G."**

12.      On September 5, 2013, the day before the hearing on GDEB's motion for summary judgment, counsel for plaintiff emailed the undersigned, stating, "[a]ttached are some documents from the naval archives showing General Dynamics intimately involved with the building of the Andrew Jackson…." <u>See</u> September 5, 2013 correspondence from plaintiff's counsel annexed hereto as **Exhibit "H;"** see the annexed naval archive documents annexed as **Exhibit "I."**

13.      These documents, proffered via email on September 5, 2013, were GDEB's first notice of any potential basis for plaintiff's claims against GDEB.[8]

---

[8] General Dynamics does not concede that the documents form a basis to pursue General Dynamics in this case and/or that they provide any evidence to support any claim against General Dynamics, whatsoever. General Dynamics also states that the manner and timing in which the documents were proffered is objectionable and improper. General Dynamics acknowledges the documents for the purpose of this removal but reserves all rights in connection with the aforementioned positions and does not waive same.

14.     On September 17, 2013, plaintiff moved to amend the Complaint. The motion was granted on the same day. See plaintiff's motion requesting leave to amend the Complaint and the court's order granting plaintiff's leave annexed hereto as **Exhibit "J."**

15.     The Third Amended Complaint added GDEB as a defendant to various causes of action to which it had not previously been named. In addition to the previously alleged Negligence Count as to Manufacturers of Asbestos Products, Willful and Wanton Count as to Manufacturers of Asbestos Products, and Loss of Consortium claims, plaintiffs added Fraudulent Misrepresentation, Battery, Negligence and Willful and Wanton. See plaintiff's third Amended Complaint annexed hereto as **Exhibit "K,"** Counts I, II, IV, V, VI, VII and X.[9]

16.     On September 17, 2013, plaintiff e-filed a notice stating that it had deposited 802 pages of records relating to the *USS Andrew Jackson* with the Central Records Depository in connection with this case. See plaintiff's September 17, 2013 notice annexed hereto as **Exhibit "L."**

## THE INSTANT NOTICE OF REMOVAL IS TIMELY FILED

17.     It is statutory law that "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." See 28 U.S.C. § 1446 (b)(2)(c).

18.     The documents produced by plaintiff for the first time on September 5, 2013 informed GDEB that the instant matter was removable. As GDEB was provided with the documents on September 5, 2013, the instant Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is being filed within thirty (30) days after receipt of the initial "other paper from which it may first be ascertained that the case is one which is or has become removable."

---

[9] On April 12, 2013, plaintiff filed a Second Amended Complaint adding A.W. Chesterton Company to the action. The Complaint was not otherwise altered. As the amendment is not material to this motion, we do not include the Second Amended Complaint as an Exhibit.

## INTRA DISTRICT ASSIGNMENT

19.     This Notice of Removal and all exhibits are being filed in the United States District

Court for the district and division in which the state court action is pending. See 28 U.S.C. § 1446(a).

## BACKGROUND

20.     This is an asbestos personal injury action by plaintiff against GDEB based upon

plaintiff's alleged asbestos-related disease caused by alleged exposure to asbestos in connection with

his U.S. Navy service.

21.     At all relevant times, GDEB was specifically engaged by the U.S. Navy to perform

work in connection with nuclear submarines pursuant to a series of United States government contracts

at its secure facility in Groton, Connecticut. Simply put, in its role as a government contractor, GDEB

was in the business of designing, redesigning, constructing, maintaining, overhauling and/or repairing

military submarines on behalf of the United States Navy in accordance with its contractual duties and

applicable military specifications in effect at the time. See Affidavit of John B. Padgett, III, annexed

hereto as **Exhibit "M."**

22.     GDEB designed and/or redesigned and/or constructed and/or maintained and/or

overhauled submarines for the federal government under the direction, control and/or supervision of the

United States Navy. Virtually every detail of this design and/or redesign and/or construction and/or

overhaul work was specified and overseen by the United States Navy and required the approval of the

United States Government at every stage of construction. See Exhibit "N," at ¶¶ 9, 10, 11.

23.     The United States Navy selected the component parts and materials for these

submarines; approved and specified their design, including the use of asbestos, if any; and required

GDEB to use them in the course of GDEB operations. A copy of the Affidavit of Roger B. Horne, Jr. is

annexed hereto as **Exhibit "N."** In other words, GDEB had no choice with respect to the component

parts and materials, including any asbestos-containing components therein, if any, used at its facility in connection with the construction, repair, maintenance, and/or overhaul of the submarines in question.

24.    The claims against GDEB appear to be based upon allegations of GDEB's involvement with the *USS Andrew Jackson*, constructed at Mare Island Naval Shipyard. Any involvement GDEB had with the *USS Andrew Jackson* would have been in connection with and pursuant to its contractual service to the U.S. Navy. Accordingly, GDEB seeks removal of this action to this Court on "federal officer" grounds pursuant to 28 U.S.C. § 1442(a)(1), as detailed below.

## FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C 1442(a)(1)

25.    Removal is proper under 28 U.S.C. § 1442(a)(1) when the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official capacity for any act under color of such office. See 28 U.S.C. §1442(a)(1).

26.    This statute overcomes the well-pleaded complaint rule by providing a method to remove a case brought in state court against a federal officer, or any other person acting under a federal officer, despite the absence of a federal cause of action. See Nesbiet v. General Elec. Co., 399 F. Supp.2d 205, 209 (S.D.N.Y. 2005); Jefferson County v. Acker, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.E.2d 408 (1999). The Supreme Court has noted that one of the purposes of the federal officer removal statute is to ensure that a federal court will adjudicate the validity of a defendant's official immunity defenses. See Arizona v. Manypenny, 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981).

27.    The federal officer statute, specifically 28 U.S.C. § 1442(a)(1), has been interpreted to allow removal of cases where private entities are the named defendants. In such cases, federal jurisdiction exists if the defendants seeking removal shows: (1) that they are persons within the meaning of the statute, who acted under a federal officer; (2) that they performed the acts for which

they are sued under color of federal office; and, (3) that they raise a colorable federal defense. See Isaacson v. Dow Chemical Co., 517 F.3d 129 (2d Cir. 2008); Machnik v. Buffalo Pumps Inc., 506 F.Supp. 2d 99 (D. Conn. 2007), (reconsideration denied, 2007 WL 4570566); McMahon v. Presidential Airways, Inc., 410 F.Supp. 2d 1189 (M.D. Fla. 2006); Nesbiet v. General Electric Co., 399 F.Supp. 2d 205 (S.D.N.Y. 2005); Madden v. Able Supply Co., 205 F.Supp. 2d 695 (S.D. Tex. 2002); Fung v. Abex Corp., 816 F.Supp. 569 (N.D. Cal. 1992). The federal officer removal statute is to be broadly interpreted and liberally construed. See Willingham v. Morgan, U.S.Kan.1969, 89 S.Ct. 1813, 395 U.S. 402, 23 L.Ed.2d 396, on remand 424 F.2d 200; see also Williams v. Brantley, W.D.N.Y.1980, 492 F.Supp. 925, aff'd 738 F.2d 419; Davenport v. Borders, D.C.Ga.1979, 480 F.Supp. 903; Dixon v. Georgia Indigent Legal Services, Inc., D.C.Ga.1975, 388 F.Supp. 1156, aff'd 532 F.2d 1373.

28.    A corporation is a "person" within the meaning of section 1442(a). Alsup v. 3-Day Blinds, Inc., 435 F.Supp. 2d 838 (S.D. Ill. 2006); see Isaacson v. Dow Chemical Co., 517 F.3d 129 (2d Cir. 2008). As such, GDEB is a "person" within the meaning of 28 U.S.C. § 1442.

29.    An entity acts under a federal officer when it assists, or helps carry out, the duties or tasks of the federal superior. In other words, a special relationship must exist, such as where a party contracts with the Government to "provide a product that the Government was using during war – a product that in the absence of Defendants, the Government would have to produce itself." See Isaacson v. Dow Chemical Co., 517 F.3d 129. Close supervision of the private entity by the Government would constitute such a special relationship. See Isaacson v. Dow Chemical Co., 517 F.3d 129.

30.    GDEB's function during the period of alleged exposure was service as a government contractor in the design, redesign, construction, maintenance, overhaul and/or repair of military submarines on behalf of the U.S. Navy in accordance with its contract(s) and applicable military specifications in effect at the time of the respective submarine's construction. GDEB designed,

redesigned, constructed, maintained, overhauled and/or repaired submarines pursuant to military procurement contracts with the Government and, in compliance with reasonably precise design specifications, as well as detailed design drawings, which were reviewed and approved by the United States Navy. <u>See</u> **Exhibit "M,"** at ¶¶ 9, 10, 11, 12, 20; **Exhibit "N,"** at ¶¶ 5, 6, 12.

31.     The Government was intimately involved in all phases of design, development and construction of these military submarines. <u>Id.</u> The Government monitored GDEB performance under its contract(s) at all times and required GDEB to perform design, redesign, construction, maintenance, overhaul and/or repair in accordance with the applicable and approved products, specifications and drawings incorporated into the contracts. <u>See</u> **Exhibit "M,"** at ¶¶ 9, 10, 11, 12, 20; **Exhibit "N,"** at ¶¶ 10, 12. All submarines designed and built pursuant to these contracts were subject to inspection, testing and approval by the United States Government. <u>Id.</u> In addition, the Government performed extensive testing of the submarines and their components and systems to ensure complete conformity with the design specifications. If any materials, equipment or parts used by GDEB in the performance of its government contracts were asbestos-containing, such materials, equipments or parts were used pursuant to and mandated by specific requirements of the U.S. Navy. <u>See</u> **Exhibit "M,"** at ¶¶ 10, 12, and 13.

32.     Furthermore, the United States Government required GDEB to design, redesign, construct, maintain, overhaul, repair and/or install each system and component part of the submarine as the Government's needs required      including any alleged asbestos-containing components and material, if any. <u>See</u> **Exhibit "M,"** at ¶¶ 10, 12, 13; **Exhibit "N,"** at ¶ 13.

33.     GDEB asserts a colorable federal defense; namely, the government contractor defense. <u>See</u> <u>Depascale v. Sylvania Electric Products, Inc.</u>, 710 F.Supp. 2d 275 (E.D.N.Y. 2010) (Granting defendant's motion for a new trial on the government contractor defense when defendant corporation

had operated a nuclear rod manufacturing facility for the government and when plaintiffs alleged injury from non-nuclear chemicals and solvents at that worksite); Beckwith v. General Electric Co. and Buffalo Pumps Co., 2010 U.S. Dist. Lexis 30360 (Ruling on Motion to Remand, March 30, 2010, a copy of which is annexed hereto as **Exhibit "O"**). In Beckwith, the plaintiffs filed an action in Connecticut Superior Court alleging asbestos exposure while employed by the former Electric Boat Division of General Dynamics. Buffalo Pumps removed the action to the District Court for the District of Connecticut under the federal officer statute, and General Electric joined in the removal. Plaintiff moved the Court to remand, and the Court denied plaintiff's motion on the basis that Buffalo Pumps and General Electric presented sufficient evidence to establish that they were federal officers with a colorable defense. In making its decision, the Court relied on the affidavits of former military officers, including retired Admiral Roger Horne, who submits an affidavit herein.

34.     In this case, just as in Beckwith, the United States Government maintained strict control over the actions of GDEB. The government contractor defense is satisfied here because the design specifications for these military submarines were government-approved, the military submarines conformed to these specifications, and to the extent that asbestos was known at the time to be a hazardous material, the Government's knowledge of such hazards was superior to the knowledge of GDEB.

35.     In fact, GDEB has been held to be a government contractor entitled to the government contractor defense. Boston v. Eastern Refractories Co., Inc., et al., 2:07-CV-63993-ER (E.D. Pa. MDL 875) (Order Granting General Dynamics Corporation's Motion for Summary Judgment, entered August 30, 2010). A copy of the Court's Order Granting General Dynamics Corporation's Motion for Summary is annexed hereto as **Exhibit "P."**

36.     As federal officers directed and required GDEB to install those parts, components, and materials on the military submarines, there is an unequivocal "causal nexus" between the direction GDEB received from the military, which it followed, and plaintiff's alleged injury. When a government contractor builds a product pursuant to military specifications and is later sued because compliance with those specifications allegedly causes personal injuries, the nexus requirement is satisfied. See Isaacson v. Dow Chemical Co.; see also Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal 1992). Quite simply, the Navy "received exactly what it sought." See Lewis v. Babcock Indus., Inc., 985, F.2d 83, 89 (2d Cir. 1993).

37.     GDEB is entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon the separate and additional federal defense of derivative sovereign immunity as set forth in Yearsley v. WA Ross Construction Co., 309 U.S. 18 (1940), and Feres v. United States, 340 U.S. 135, 137 (1950).

38.     Yearsley established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract. The Yearsley doctrine is satisfied here because the acts complained of were performed at the direction of government officers, namely the United States Navy, acting pursuant to government authorization, and if the government had performed these acts directly, it would be immune from suit.

39.     In Feres, the Supreme Court established the rule that a soldier may not sue the government for service related injuries. The Supreme Court extended Feres immunity to military contractors in Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 673 (1977), holding, inter alia, that the relationship of the government to its contractors was "no less 'distinctively federal in character'" than the government's relationship to its soldiers. Id. at 671. GDEB is entitled to derivative sovereign immunity under Feres because GDEB was operating under the Navy's direct supervision and control with respect to the design, redesign, construction, maintenance, overhaul and/or repair of

submarines at all relevant times. Moreover, the Navy required GDEB to implement the Navy's military judgments in designing, building, maintaining and modernizing its submarine fleet, and these military judgments are immune from judicial scrutiny.

40.     Separate and additionally, GDEB is entitled to federal officer removal under 28 U.S.C. 1442(a)(1) based upon the "combatant activities exception" of the Federal Tort Claims Act, which bars suit against the federal government for claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(a). The principles underlying the combatant activities exception have been extended to preempt claims against government contractors. See, e.g. Saleh v. Titan Corp., 580 F.3d 1 (D.C. Cir. 2009), Koohi v. United States, 976 F.2d 1328, 1336 (9th Cir. 1992).

41.     Plaintiff's claims against GDEB are preempted by the combatant activities exception because, (1) the activities giving rise to the claim arose during "time of war" and, (2) GDEB's actions during the period were combatant activities within the meaning of the statute. The documents produced by plaintiff regarding GDEB's purported involvement with the *USS Andrew Jackson*, span 1960 through 1964. See Exhibit "I." The United States was engaged in the Vietnam War between 1960 and 1964 (and beyond); thus, the claim arose during "time of war." Moreover, GDEB's actions at all relevant times with respect to the design, redesign, construction, overhaul, maintenance and modernization of the submarine fleet were under the direction of the Navy and for the purpose of supporting the Navy's wartime and/or active conflict activities. Accordingly, GDEB's activities were "combatant activities." See e.g., Johnson v. United States, 170 F.2d 767, 769 (9th Cir. 1948) (Aiding others to swing the sword of battle is certainly a 'combatant activity'….).

42.     A properly removed case cannot be remanded for discretionary or policy reasons, such as allegedly related State court cases or a contention that judicial economy compels remand. 28 U.S.C.

§ 1447(c); <u>Thermitron Products, Inc. v. Hermansdorfer</u>, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1). <u>Willingham v. Morgan</u>, 395 U.S. 402, 405 (1960).

43.     GDEB is not required to notify and obtain the consent of any other defendant in this action in order to remove plaintiff's action as a whole under § 1442(a)(1). <u>See</u> <u>Alsup v. 3-Day Blinds, Inc.</u>, 435 F.Supp.2d at 842-843.

44.     Should plaintiffs move to remand this case, GDEB respectfully requests an opportunity to respond more fully in writing, including the submission of additional affidavits and authority.

45.     GDEB reserves all of its defenses.

46.     As required by 28 U.S.C. § 1446(b), true and correct copies of the process and pleadings served upon GDEB are being filed with this Notice of Removal.

47.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all parties and filed with the Circuit Court, Third Judicial Circuit, Madison County Illinois.

## <u>CONCLUSION</u>

48.     Removal of this action is proper under 28 U.S.C. § 1442, as it is a civil action brought in state court, and the federal district courts have original jurisdiction over the subject matter under 28 U.S.C. § 1442 (a)(1) because GDEB was acting under an officer or agency of the United States.

**WHEREFORE**, defendant General Dynamics Corporation prays this action proceed in this Court as an action properly removed thereto.

**GENERAL DYNAMICS CORPORATION**

Dated:  Chicago, Illinois, October 1, 2013

By:_____/s/ Anthony M. Goldner_____

Anthony M. Goldner, 6225033
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
55 West Monroe Street, Suite 3800
Chicago, Illinois 60603-5016
312.704.0550 p | 312.704.1522 f
anthony.goldner@wilsonelser.com

## CERTIFICATE OF SERVICE

I, the undersigned, counsel for General Dynamics Corporation, hereby certify that a true and correct copy of the foregoing **NOTICE OF REMOVAL** and supporting exhibits are being filed electronically through the Electronic Case Filing (ECF) system provided by the Court and shall be available for viewing and downloading from the ECF system by all counsel of record and to those registered to receive a Notice of Electronic Filing for this case on this 1st of October 2013.

_____/s/ Anthony M. Goldner_____